UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LIZA GRAY, | ) |
| Plaintiff, | ) ) ) |
| | ) No. 20 C 2466 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| MANORCARE HEALTH SERVICES, LLC d/b/a HCR MANORCARE HEALTH SERVICES, LLC, | ) ) ) ) |
| Defendant. | ) ) |

## OPINION AND ORDER

Plaintiff Liza Gray alleges that her former employer, Defendant ManorCare Health Services, LLC ("HCR"), eliminated her position as a nurse educator on the basis of her disability. She brings this suit against HCR pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, alleging discrimination, including failure to accommodate, (Count I) and retaliation (Count II). HCR has moved for summary judgment. Because no reasonable juror could infer disability discrimination or retaliation under the ADA from the evidence before the Court, the Court grants HCR's motion for summary judgment.

## BACKGROUND[1]

As of August 2018, Gray had worked at HCR for twenty-five years. Gray held various roles at HCR, including nurse educator, regional nurse, medical records and pharmacy liaison, and preceptor trainer for nurses. At some point in 2016, while Gray was working as a regional nurse, she investigated one of HCR's facilities and found that it was illegally saving controlled substances. Diane Lube, HCR's regional director of operations ("RDO"), oversaw that facility.

---

[1] The Court derives the facts in this section from the Joint Statement of Undisputed Material Facts. *See* Doc. 50. The Court takes all facts in the light most favorable to Gray, the non-movant.

Gray testified that her investigation frustrated Lube and that her outspokenness generally intimidated Lube.

Near the end of 2016, Lube, who was responsible for placing regional nurses, told Gray that she no longer needed Gray for the roles she had filled, and that the only available position was as regional nurse educator. Gray expressed her belief that this would be an impossible role for her because she could not work more than thirty hours per week due to appointments with doctors and physical therapists. Ultimately, Kelly Ciger, Gray's direct supervisor, hired Gray as the nurse educator at HCR's Oak Lawn East facility. Gray testified that Lube was upset with Ciger's decision but still permitted Gray to take the role. Gray estimates that she worked as a nurse educator for at least one year.

In June 2018, while working as a nurse educator, Gray sent a doctor's note to HCR regarding her back problems. The note, dated June 6, 2018, stated that Gray should not sit for long intervals and should stand after fifteen minutes. To some degree, other HCR employees already knew about Gray's underlying back problems. For example, Ciger knew that Gray's back problems at times caused her to miss work. Ciger considered that Gray might need physical accommodations to work because she occasionally had to sit down but noted that this was "just like anybody else." Doc. 50 ¶ 50. She also recalled that Gray might have walked slower and kept a pillow on her chair. Deborah Durham, HCR's regional human resources manager, knew that Gray was sometimes in pain. Durham testified that Gray did not refer to her back problems frequently. Durham also testified that she was not aware that the back problems created any restrictions for Gray. Lube testified that she did not know about Gray's disability. Ciger testified that it was "possible" that she discussed Gray's back problems with Lube, however. Doc. 50 ¶ 51.

Gray could not recall the exact day she sent the doctor's note to HCR, but sometime shortly thereafter—around a week and a half to two weeks—she had a telephone call with Lube. Lube told Gray that she was eliminating Gray's nurse educator position at Oak Lawn East because of financial needs. She further told Gray that the only open position was at HCR's Elk Grove facility. In response, Gray informed Lube that she had a back condition resulting from a tumor in her sacral bone that prevented her from sitting for more than fifteen minutes at a time. Because she estimated her commute to the Elk Grove facility would take around forty-five minutes, she would not be able to make it. In comparison, her commute to Oak Lawn East took around twelve or thirteen minutes. Gray testified that Lube told her to sleep on it and let her know the next day. Prior to this telephone conversation, Gray had never discussed concerns about commute times or her doctor's note with Lube. Gray also did not know whether Lube knew of either her commute limitations or the doctor's note. Lube testified that she has never seen a doctor's note for Gray and that, prior to the phone call, she did not know that Gray had any disabilities. Durham testified that in her experience, either Lube or Ciger would have known about Gray's doctor's note. Durham further testified that the note would have constituted a request for accommodation. Gray believes that the fact that she required an accommodation played a part in Lube's decision to eliminate her position because Lube did not want to accommodate her.

Lube made the ultimate decision regarding whether to eliminate Gray's position. She does not recall when she made the decision—whether it was days, weeks, or months before informing Gray.[2] She testified that she would have consulted with the needs of other buildings

---

[2] Gray argues that the Court should strike Lube's testimony regarding her decision to eliminate Gray's position on the grounds that it lacks foundation because Lube cannot establish the day, month, or year that she made the decision. Though Gray correctly notes that "a court may consider only admissible evidence in assessing a motion for summary judgment," *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009),

and the human resources department when making the decision, and that she and others agreed that Oak Lawn East did not need the extra level of support from Gray any longer. Lube did not consult with either Ciger or Durham prior to eliminating Gray's position.

After her phone conversation with Lube, Gray wanted to explore the possibility of other positions within HCR as an accommodation. She met with "Jeff," a human resources director in HCR's corporate office, and identified at least five HCR facilities that involved a shorter commute than Elk Grove. Gray believes that Jeff told her that no positions were available. Gray also told Lube that she contacted other buildings who said they could use her. Gray testified that, in response, Lube instructed her to stop calling other centers and talking to people. Lube does not recall giving that instruction. Lube believes there were a variety of different roles that Gray could have performed but also pointed to the fact that Gray did not want to work five days a week or utilize her license. She also testified that she did not know whether there were open positions at facilities closer than Elk Grove. Ciger testified that there would have been "[l]ots of different roles" at the time Lube eliminated Gray's position and that these roles would encompass "multiple positions." Doc. 50 ¶ 43. Similarly, Durham noted that "at any point in time [HCR] has a number of open position[s] they're trying to fill." *Id.* ¶ 44. She elaborated that she did not know whether the open positions were managerial or not. Further, Durham testified

testimony based on personal knowledge is admissible, Fed. R. Evid. 602. Rule 602 provides that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony." *Id.* Here, no one contests that the decision to eliminate Gray's position belonged to Lube. From her "position and the nature of [her] participation in the matters to which [she] swore, the Court may reasonably infer that [Lube] had personal knowledge of" her decision to eliminate Gray's position. *Woods v. Amazon.com, LLC*, No. 17-CV-4339, 2020 WL 3578496, at *4 (N.D. Ill. July 1, 2020) (citations omitted) (internal quotation marks omitted). The fact that corroborating evidence may not exist goes to weight, not admissibility. *Saggu v. Dejoy*, No. 19 C 2303, 2021 WL 1165106, at *2 (N.D. Ill. Mar. 26, 2021) (overruling evidentiary objection because witness had personal knowledge and lack of corroborating evidence did not impact admissibility). The Court declines to strike Lube's testimony. *See Woods*, 2020 WL 3578496, at *4 ("The Court is able to sift through the evidence and to consider each piece under the applicable federal rules without going to the additional work of editing and striking out portions of the parties' declarations." (citation omitted) (internal quotation marks omitted)).

to her belief that it would have been unusual for an RDO like Lube to make an accommodation decision alone.

Around the same time, Gray sought a continuous FMLA leave of absence upon the recommendations of Durham and Jeff. Jeff was the first person at HCR who raised the possibility of FMLA leave with Gray. Gray's leave began on June 16, 2018 and continued through October 1, 2018. Gray was unable to work during her FMLA leave. On October 16, 2018, Gray sought a personal leave of absence; her request did not provide a definitive return to work date. At the time, Gray did not know when she would be able to return to work. When asked during her deposition about the reasons underlying her request for personal leave, she said that she was probably not able to work. In December 2018, Gray asked human resources whether HCR could keep her as an active employee so she could continue her insurance benefits. Durham denied her request, and her employment ended on December 31, 2018.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine whether a genuine dispute of material fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, documents, answers to interrogatories, admissions, stipulations, and affidavits or declarations that are part of the record. Fed. R. Civ. P. 56(c)(1); *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 999 (7th Cir. 1992). The party seeking summary judgment bears the initial burden of demonstrating that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Ill.*, 908 F.3d 290, 295 (7th Cir. 2018). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above

to identify specific material facts that demonstrate a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324; *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014). The Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wehrle v. Cincinnati Ins. Co.*, 719 F.3d 840, 842 (7th Cir. 2013). However, a bare contention by the non-moving party that an issue of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), and the non-moving party is "only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture,'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation omitted).

## ANALYSIS

### I. Discrimination Claim

The ADA prohibits an employer from discriminating against "a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To state an ADA discrimination claim, Gray must allege (1) she is disabled within the meaning of the ADA; (2) she is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) her disability caused her to suffer an adverse employment action. *Roberts v. City of Chicago*, 817 F.3d 561, 565 (7th Cir. 2016). In order to link the adverse action with her disability, Gray must "show a genuine issue of material fact exists regarding whether [her] disability was the but for reasoning for the adverse action." *Kurtzhals v. Cnty. of Dunn*, 969 F.3d 725, 728 (7th Cir. 2020) (citation omitted) (internal quotation marks omitted). The Court will weigh the evidence "as a whole" to determine whether it "would permit a reasonable factfinder to conclude that the

plaintiff's [protected characteristics] caused the . . . adverse employment action." *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

### A.  Qualified Individual

Before reaching the question of causation, the Court must address whether Gray constitutes a "qualified individual" under the ADA. HCR argues that she does not. To support its argument, HCR points to Gray's seven-month leave of absence and her admission that she was not able to return to work. But "[w]hether an individual is a qualified individual with a disability is determined at the time of the employment decision." *E.E.O.C. v. S & C Elec. Co.*, 303 F. Supp. 3d 687, 689 (N.D. Ill. 2018) (quoting *Hamm v. Exxon Mobil Corp.*, 223 F. App'x. 506, 508 (7th Cir. 2007)). Here, Gray asserts that HCR's adverse employment action was its decision to eliminate Gray's position.[3] Doc. 57 at 11 ("[T]he operative adverse employment action is HCR's elimination of Gray's position."). Construing the facts in a light most favorable to Gray, at the time Lube undertook this action, the record indicates that Gray was willing and able to work. *See, e.g.*, Doc. 50 ¶ 40 ("Gray contacted other buildings who confirmed they could use Gray"); *id.* ¶ 41 ("Lube agrees there was 'a variety of different roles that [Gray] could have performed.'"); *S & C Elec. Co.*, 303 F. Supp. 3d at 689 (denying motion to dismiss because at the time the defendant decided to terminate the plaintiff, he was "ready, willing and able" to

---

[3] To the extent Gray also argues that her termination was an adverse employment action, Gray was not a qualified individual under the ADA when HCR terminated her employment because she was unable to work at that time. *See* Doc. 50 ¶ 27 ("Gray could not work during the time she took FMLA leave."); *id.* ¶ 28 (after her FMLA leave, "Gray sought personal leave of absence and her request did not provide a definitive return to work date"); *id.* ¶ 29 ("Gray did not know at the time when she would be able to return to work and testified she was 'probably not able to work' when asked for the reasons underlying her request for personal leave"); *Byrne v. Avon Prod., Inc.*, 328 F.3d 379, 381 (7th Cir. 2003) ("Inability to work for a multi-month period removes a person from the class protected by the ADA."); *Atkins v. AT&T Servs., Inc.*, No. 21-CV-4207, 2022 WL 1316579, at *3 (N.D. Ill. May 3, 2022) ("[A]dmissions that Plaintiff was unable 'to work for multi-month period' removes him 'from the class protected by the ADA.'" (quoting *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 481 (7th Cir. 2017))). Therefore, the Court considers HCR's elimination of Gray's position to be the only adverse employment action relevant to her ADA discrimination claim and does not further address HCR's arguments regarding other employment decisions, such as HCR's ultimate decision to terminate her employment.

work). Therefore, Gray has put forth sufficient evidence to demonstrate that she is a "qualified individual" under the ADA for purposes of her discrimination claim.

B.  Adverse Action on the Basis of Gray's Disability

To prevail on a claim of disability discrimination, Gray must demonstrate that "but for" her disability, HCR would not have eliminated her position. *Hooper v. Proctor Health Care Inc.*, 804 F.3d 846, 853 (7th Cir. 2015) (citation omitted). "[I]n order for a disability to be a motivating factor behind [an adverse employment decision], the decision maker must have knowledge of the disability." *E.E.O.C. v. Cast Prod., Inc.*, No. 07C5457, 2009 WL 595935, at *8 (N.D. Ill. Mar. 9, 2009) (citing *Hedberg v. Ind. Bell Tel. Co., Inc.*, 47 F.3d 928, 932 (7th Cir. 1995). HCR argues that the decision could not have been based on Gray's disability because the decision maker, Lube, did not know of the disability when she made the decision. Lube testified that she did not know of Gray's disability, Doc. 50 ¶ 16, and Gray testified that she "never discussed concerns regarding commute time with Lube" prior to her phone call and she did not know whether Lube was aware of the doctor's note she provided, *id.* ¶¶ 17–18, 21. HCR also argues that even if Gray could raise an inference that Lube knew about her disability, Gray has not met her burden to demonstrate that the disability motivated Lube's decision to eliminate Gray's position. The Court agrees.

Gray refers to the following undisputed facts to demonstrate that Lube was aware of her disability prior to eliminating her position: before Lube told Gray she eliminated her position, Gray provided HCR with a doctor's note describing the accommodations she required, *id.* ¶ 19; people at HCR knew of Gray's back problems, *id.* ¶¶ 48–49; and Ciger testified that it was possible that she discussed Gray's back problems with Lube, *id.* ¶ 51. Doc. 57 at 9–10. These facts, construed in a light most favorable to Gray, could allow a reasonable factfinder to

8

conclude that Lube knew of Gray's disability. But even if these facts were sufficient to raise an inference that Lube knew about her disability, Gray has not made the requisite showing that Lube eliminated her position *because of* her disability. She does not point to any evidence to suggest that, but for her back problems, Lube would not have eliminated her position. *See Hooper*, 804 F.3d at 855 (affirming district court's grant of summary judgment where plaintiff "failed to show any type of connection between any alleged discriminatory animus . . . and the termination decision"). Because Gray does not meet her burden to demonstrate discrimination, the Court grants summary judgment on this claim.

## II.     Accommodation Claim

The ADA also prohibits an employer's refusal to make reasonable accommodations for known mental or physical limitations of an otherwise qualified individual with a disability. *Rodrigo v. Carle Found. Hosp.*, 879 F.3d 236, 241 (7th Cir. 2018) (citing 42 U.S.C. § 12112(b)(5)(A)). To establish her failure to accommodate claim, Gray must allege that (1) she is a qualified individual with a disability, (2) HCR was aware of her disability, and (3) HCR failed to reasonably accommodate her disability. *Brumfield v. City of Chicago*, 735 F.3d 619, 631 (7th Cir. 2013). As explained *supra*, Gray has put forth sufficient evidence to demonstrate that she was, at least as of the time she sought accommodation, a qualified individual. And at this stage, HCR does not appear to dispute that it knew of her disability. Therefore, the Court will only address the third element—whether HCR failed to reasonably accommodate Gray's disability.

A reasonable accommodation may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, . . . and other similar accommodations for individuals with disabilities." 42 U.S.C.

§ 12111(9). At the summary judgment stage, where an employee requests reassignment to a vacant position, it is the *employee's* "burden to show that a vacant position exists for which [she] was qualified." *Gray v. FleetPride, Inc.*, No. 21 C 4981, 2022 WL 10080811, at *8 (N.D. Ill. Oct. 17, 2022) (citing *Jackson v. City of Chicago*, 414 F.3d 806, 813 (7th Cir. 2005)); *see also Martinez v. Am. Airlines*, No. 15 C 7144, 2017 WL 201363, at *6 (N.D. Ill. Jan. 18, 2017) ("When a plaintiff alleges that the employer failed to adequately explore transfers that would constitute reasonable accommodations, he bears the burden of showing that a vacant position existed for which he was qualified." (citation omitted)), *aff'd sub nom. Martinez v. Am. Airlines, Inc.*, 715 F. App'x 568 (7th Cir. 2018). "If the plaintiff shows that a position existed, the court will consider whether the employer's failure to offer that accommodation was due to a breakdown in the interactive process." *Martinez*, 2017 WL 201363, at *6. However, "the issue of a breakdown in the process is significant only if [the plaintiff] can show that an alternative position existed"; if a plaintiff fails "to make that showing, [a court] need not address his argument that the process broke down." *Id.* at *8.

HCR makes multiple arguments regarding Gray's "reasonable accommodation" request, which she asserts was the "possibility of other HCR employment opportunities." Doc. 57 at 12. At this stage, HCR does not appear to contest that Gray requested this accommodation. Instead, HCR makes various arguments regarding the reasonableness of Gray's request, including whether the ADA requires employers to accommodate an employee's requested commute. The Court need not address these arguments because Gray has not provided sufficient evidence to demonstrate that she was qualified for another vacant position. She points to the fact that she identified other buildings that involved a shorter commute, Doc. 50 ¶ 39; she contacted other buildings who confirmed they could use her, *id.* ¶ 40; Lube instructed her to stop calling these

10

buildings, *id.*; and Ciger and Durham agreed that there would have been many different roles available, *id.* ¶¶ 43–44. She has not, however, proffered evidence of any specific vacant role or evidence that she would be qualified for these purported roles—for example, that they could accommodate her schedule of working less than five days a week. *See Novak v. Nicholson*, 231 F. App'x 489, 492 (7th Cir. 2007) (affirming grant of summary judgment on failure to accommodate claim, reasoning that it was plaintiff's "responsibility in discovery to obtain the necessary evidence to support his failure to accommodate case, for instance, by requesting copies of vacancy or placement announcements"); *Pryor v. Americold Logistics, LLC*, No. 118CV00815JRSMJD, 2019 WL 5722223, at *5 (S.D. Ind. Nov. 5, 2019) (citing *DePaoli v. Abbott Labs.*, 140 F.3d 668, 675 (7th Cir. 1998) ("[T]hough Plaintiff has identified several positions that were vacant—administrative assistant, dock clerk, wave planner, PSM associate, human resources associate, etc.—there is no evidence that Plaintiff was qualified for any of those positions."); *cf. Platt v. Chi. Transit Auth.*, No. 18 C 07219, 2019 WL 5393995, at *5 (N.D. Ill. Oct. 22, 2019) (dismissing accommodation claim on motion to dismiss where plaintiff alleged there were "vacant positions, for which [he] was qualified," but failed to "plead any facts indicating that specific vacant positions were available, and that he was qualified for those specific vacant positions" (alteration in original)). At this stage in the proceedings, with the benefit of discovery, Gray has not demonstrated that a vacant position existed for which she was qualified. *See Martinez*, 2017 WL 201363, at *7 (finding it "significant[]" that defendant's "motion for summary judgment was made after the close of discovery, a period during which [plaintiff] had every opportunity to obtain evidence regarding positions that were vacant during the relevant period[,]" and granting summary judgment because plaintiff failed to offer such evidence); *cf. Gray*, 2022 WL 10080811, at *8 (distinguishing case at motion to dismiss stage

where plaintiff sufficiently pleaded failure to accommodate from cases at summary judgment stage where parties could not establish a vacant position for which they were qualified after the benefit of discovery).

Because Gray has not demonstrated that an alternative position existed, the Court need not address her argument that HCR failed to adequately engage in the interactive process. *See Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 292 (7th Cir. 2015) ("[F]ailure of the interactive process is not an independent basis for liability under the ADA." (citation omitted)); *Martinez*, 2017 WL 201363, at *8 (declining to address plaintiff's argument that the interactive process broke down because "the issue of a breakdown in the process is significant only if [plaintiff] can show that an alternative position existed," and plaintiff "failed to make that showing"). Therefore, the Court grants HCR's motion for summary judgement on Gray's failure to accommodate claim.

**III.     Retaliation Claim**

The ADA prohibits retaliation against employees who engage in statutorily protected activity. *Koty v. DuPage Cnty.*, 900 F.3d 515, 519 (7th Cir. 2018). To prevail on her retaliation claim, Gray must establish that (1) she engaged in a protected activity, (2) she suffered a materially adverse action, and (3) a "but for" causal connection exists between the two. *Kotaska v. Fed. Express Corp.*, 966 F.3d 624, 632 (7th Cir. 2020) (citing *Rowlands v. United Parcel Serv.*, 901 F.3d 792, 801 (7th Cir. 2018)). Gray may establish her claim with circumstantial evidence, including "(1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive[d] better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action."

12

*Parker v. Brooks Life Sci., Inc.*, 39 F.4th 931, 937 (7th Cir. 2022) (quoting *Rowlands*, 901 F.3d at 802). As it did with her discrimination claim, the Court will consider the evidence "as a whole" to determine whether it "would permit a reasonable factfinder to conclude that the plaintiff's [engaging in a protected activity] caused the . . . adverse employment action." *Ortiz*, 834 F.3d at 765; *see also Rowlands*, 901 F.3d at 801 (applying *Ortiz* to a retaliation claim).

In her complaint, Gray alleges that she engaged in protected activity when she attempted to participate in the interactive process and requested a reasonable accommodation from HCR. Requesting a reasonable accommodation is a protected activity. *See Cassimy v. Bd. of Educ. of Rockford Pub. Sch., Dist. No. 205*, 461 F.3d 932, 938 (7th Cir. 2006) (finding that the plaintiff "engaged in statutorily protected expression when he requested an accommodation"). Although Gray has provided no support for her contention that attempting to participate in the interactive process is a protected activity, the Court will assume that it is because the process is so intertwined with accommodation requests. *See E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 804 (7th Cir. 2005) ("[E]mployer and the employee must work together through an interactive process to determine the extent of the disability and what accommodations are appropriate and available." (citation omitted) (internal quotation marks omitted)).

In any event, Gray has not demonstrated that either of these protected activities caused an adverse action. Here, Gray asserts that the "record evidence of retaliation" shows that "(1) [she] requested an accommodation, (2) there is no admissible evidence Lube had made an elimination decision prior to that request, (3) Lube refused to engage in interactive process, and (4) [her] position was eliminated and she was terminated." Doc. 57 at 15. Even assuming that Lube did not make her elimination decision until after Gray gave HCR her doctor's note, these facts are insufficient to defeat a summary judgment motion because Gray puts forward no evidence—

13

circumstantial or otherwise—to demonstrate that but for her accommodation requests or her attempts to engage in an interactive process, her position would not have been eliminated or she would not have been terminated. See *Formella v. Brennan*, 817 F.3d 503, 516 (7th Cir. 2016) (affirming grant of summary judgment where plaintiff did not present evidence that established a causal connection between any alleged retaliation and the plaintiff's protected action). To the extent Gray lists these four facts in an attempt to demonstrate suspicious timing (between, for example, her providing HCR with her doctor's note and Lube eliminating her position), "suspicious timing alone is almost never enough to satisfy the causation prong of a plaintiff's burden at summary judgment," *Reynolds v. Champaign Urbana Mass Transit Dist.*, 378 F. App'x 579, 582 (7th Cir. 2010), and Gray has presented no other evidence to establish but for causation. She merely asserts that a reasonable juror "could hear those simple facts" and conclude that retaliation occurred. Doc. 57 at 11. This is not enough at summary judgment, "the put up or shut up moment in a lawsuit, when a party must show what *evidence* it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (emphasis added) (citation omitted) (internal quotation marks omitted); *see also Brown v. Advoc. S. Suburban Hosp.*, 700 F.3d 1101, 1108 (7th Cir. 2012) ("[T]he plaintiffs must produce evidence that a retaliatory motive *actually* influenced the decision-maker, not merely that it *could* have."). Because Gray has not demonstrated that any potentially protected activity caused any adverse action, the Court grants HCR's motion for summary judgment on Gray's retaliation claim.

## CONCLUSION

For the foregoing reasons, the Court grants HCR's motion for summary judgment [48] and enters judgment for HCR on Gray's complaint. Case terminated.

Dated: November 1, 2022

_____
SARA L. ELLIS
United States District Judge